## JAMES A. BARNETT *v.* JAMES A. EATON.

VERDICT. *Vitiated by illegal interference of bailiff. Testimony of jurors. Motion for new trial.*

Where the defendant, against whom a verdict has been rendered in a civil action, upon a motion for a new trial shows by the testimony of several of the jurors that the bailiff who attended the jury diverted their attention from the case by talking garrulously of matters foreign thereto, and took part in their deliberations as if a member of the jury, and, by the affidavit of another juror, that the bailiff was the partisan of the plaintiff, the verdict should be set aside and a new trial granted, notwithstanding the fact that the plaintiff had no connection with the illegal conduct of the officer.

APPEAL from the Circuit Court of Perry County.

KENNETH McINNIS, ESQ., Special Judge, presiding by agreement of parties, in place of Hon. S. H. Terral, disqualified, because having been of counsel in the case.

This is an action of *assumpsit,* brought by James A. Eaton against James A. Barnett. In the trial of the case in the court below the jury found a verdict in favor of the plaintiff, and the defendant moved to set it aside and for a new trial upon the ground stated in the opinion of the court, which motion was overruled. From a judgment upon such verdict the defendant appealed to this court.

*T. S. Ford,* for the appellant.

On a motion to set aside a verdict on account of remarks made by the officer in charge, it is sufficient to show that there is reason to suspect that the remarks were made and that they were likely or calculated to influence the verdict, without proving that such influence was in fact exerted. Proffatt on Jury Trials, § 391.

" The utmost precaution should at all times be observed to prevent any attempt to forestall the judgment or to bias the mind of a juror in reference to the merits of any issue or question which in the discharge of his duties he may be called on to decide. All trials by jury ought to be effectually guarded against the exertion of every species of improper influence, and the law will never allow a party to derive any possible advantage from it. It

is, therefore, an established and salutary rule of law that the least intermeddling with the jurors is a sufficient cause for setting aside the verdict." Hill. on New Trials, p. 164, § 6. And it is not necessary that the attempt should be made by a party nor by his agent if done in his behalf; nor is it necessary that the jurors should in fact have been thereby controlled or determined in the verdict. Ib., 2 Strobh. 410 ; 40 Vt. 363.

It is not necessary to show that the mind of the juror was influenced by the improper communication. 13 Miss. 218.

Where the justice deliberated with the jury in their retirement a new trial was granted: 13 Johns. 487 ; Hill. on New Trials 172 ; 2 Graham and Waterman on New Trials 328. Where communications between members of the jury and the officer having them in charge are such that prejudice *may* have resulted to the unsuccessful party, the verdict should be set aside. *People* v. *Knapp*, 42 Mich. 267 ; 74 Ind. 275 ; Thompson and Merriam on Juries, § 362.

In New York in a recent civil case it was held that such communications furnish ground for a new trial when they are of such a nature as to create a suspicion that the verdict was improperly influenced, and that the affidavits of jurors would be admitted to show the fact of such communication but not its effect on the minds of the jury. 45 Barb. 98.

*Ben Lane Posey* and *Eaton & Bowers*, for the appellee.

There is an advancing tendency in all the courts, in all cases, civil and criminal, to allow verdicts to stand notwithstanding serious and reprehensible conduct in the officer or third persons.

The result of the latest decisions on this subject is well stated in Thompson and Merriam on Juries, §§ 349, 350, and numerous cases cited, among them *Ned* v. *The State*, 33 Miss. 365. We call the special attention of the court to the statement, argument, and citations on pages 409 and 410 of Thompson and Merriam on Juries.

Many jurors were examined, and the result of all their testimony is the same, that the bailiff was only a garrulous, funny, jolly old man, that what he said was understood as a joke, that he was

impartial and indifferent between the parties, and that if he leaned either way it was in favor of the appellant. He stated no fact concerning the case, proposed nothing, but after the jurors had announced a mental conclusion he assented, "That's so, that's so." His opinion was in favor of both parties—both were right.

We submit that in the present state of the law and decisions this case is not shown to be one in which injury has probably been done to appellant, and, therefore, the verdict should stand. In addition to above citations we specially cite the late case of *Puck* v. *The State,* 96 Ind. 16, a criminal and capital case, in which the bailiff was guilty of gross misconduct, promenading the jury along the streets of the town and by the scene and locality of the homicide they were trying, and yet the verdict was upheld.

It is against public policy (as in this case) to encourage the defeated party in a suit to besiege the jurors after verdict and inquire into their conduct and what happened during their deliberations, and to importune and solicit them to make affidavits impeaching the verdict.

COOPER, C. J., delivered the opinion of the court.

On the motion for a new trial the defendant, against whom a verdict had been rendered, introduced several of the jurors as witnesses to the misconduct of the officer who had the jury in charge, and by them proved that he had taken part in the deliberations of the jury, and according to the affidavit of one of the jurors who was not examined in open court, it is stated that he had "argued in favor of a verdict for the plaintiff." On the other hand, several other jurors testified that the officer, a garrulous and noisy old man, while talking freely in the presence of the jury and to its members on other subjects, said nothing about the case and took no part in its decisions so far as they knew or heard, but that when the verdict had been agreed on he advised as to the form in which it should be reduced to writing. The officer testified that he said nothing to any member of the jury about the case during the deliberations of the jury, but that when a verdict had been agreed on one of the jurors asked him how to put it in form, to which he

replied, "Put it, We, the jury, find for the plaintiff, or for the defendant, as the case may be."

We apprehend that the learned judge below treated the evidence as conflicting, and for this reason insufficient to establish the misconduct of the officer. By the testimony of all the jurors who spoke the officer is shown to have been guilty of directing the attention of the jury from the case under consideration by the noisy and repeated history of his own exploits in early life, talking so much, according to some of the jurors, that they ceased to note what he was saying, and did not remember what he had really said. We attach but little importance to his testimony. It appears by the testimony of all the jurors that during their deliberations the jury were so situated as that the officer might, in some of the conversations indisputably held by him, have discussed the case with some of the jurors without the others hearing what was said by him; and since it is affirmatively shown by the testimony of some of them that this was done, we do not think it is overcome by the evidence of those who did not hear what was said, and whose evidence is at most of a negative character. Under these circumstances we are of opinion that the verdict ought not to be permitted to stand. Litigants are entitled to have their controversies in the courts settled by that tribunal to which the law commits their decision, and that body was in this case a jury of twelve sworn men, and not a sworn jury and a bailiff. It is not shown exactly what was said by the officer, but it does appear that he took part in the deliberations just as a member of the jury, and, according to the affidavit of one of the jurors, was the partisan of one of the parties. It is not suggested that the plaintiff was at all connected with the unlawful action of the officer, but in view of the facts that is immaterial, since his conduct of itself was sufficient to vitiate the verdict. The plaintiff, though free from fault, is not entitled to retain the advantage of an illegal verdict, nor is that a legal verdict in the finding of which thirteen men have participated.

*Judgment reversed.*